IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KERRI A. NORRIS | * | |
| | * | |
| v. | * | Civil Case No. WDQ-13-2426 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 17, 21. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Norris's motion be denied.

Ms. Norris applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 15, 2010, alleging a disability onset date of February 1, 2008. (Tr. 136-46). Her claims were denied initially on May 14, 2010, and on reconsideration on November 24, 2010. (Tr. 70-74, 81-84). An Administrative Law Judge ("ALJ") held a hearing on March 12, 2012, (Tr. 29-65), and subsequently denied benefits to Ms. Norris in a written opinion, (Tr. 10-28). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Norris suffered from the severe impairments of mild

degenerative disc disease, obesity, depression, and anxiety disorder. (Tr. 15). Despite these impairments, the ALJ determined that Ms. Norris retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to stand and walk in excess of two (2) hours, but less than six (6) hours. She must have the option to alternate between sitting and standing. She is able to sit for six (6) hours in a given workday day with occasional balancing, stooping, crouching, crawling, squatting, kneeling, and climbing of stairs. She must avoid exposure [to] hazards, including unprotected heights and dangerous machinery, and must avoid extremes of heat or cold or vibrations. She is limited to simple tasks with simple instructions with a specific vocational profile (SVP) of two (2). She should not be required to have contact with the general public in her work.

(Tr. 18). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Norris could perform, and that she was not therefore disabled. (Tr. 23-24).

Ms. Norris disagrees. She asserts several arguments in support of her appeal: (1) that the mental RFC assessment was inadequate; (2) that the moderate limitations determined by the state agency physicians were not included; (3) that the ALJ assigned inadequate weight to the opinions of her treating sources; (4) that the determination that Ms. Norris could perform light work was inconsistent with SSR 83-10; and (5) that the ALJ presented a faulty hypothetical to the VE. Each argument lacks merit.

Ms. Norris's first argument relates to the adequacy of the mental RFC assessment determined by the ALJ. Pl. Mot. 22-23. Ms. Norris asserts that the mental RFC assessment lacked sufficient detail about particular functions. In making that argument, however, Ms. Norris focuses exclusively on the bolded language of the RFC assessment set forth in the opinion heading. Pl. Mot. 22. In fact, the ALJ's overall analysis expressly considered Ms. Norris's activities of daily living; her social functioning; her concentration persistence, or pace; her conservative course of treatment, her failure to maintain a consistent relationship with a mental

health specialist, and the analysis of a state psychological consultant. (Tr. 16-22). The ALJ concluded that, with respect to the mental health impairments, "Although her records do not support the claimant's allegations, the undersigned gave her the benefit of the doubt and limited her to simple tasks with no contact with the public as defined herein. However, there is no evidence to limit the claimant beyond the residual functional capacity (RFC) presented above." (Tr. 20). In light of the evidence considered by the ALJ regarding Ms. Norris's functional capacity, remand is unwarranted.

Next, Ms. Norris argues that the ALJ disregarded Dr. F. Ewell's perceived limitations regarding her mental status. Pl. Mot. 23-24. Ms. Norris is correct that Section I of Dr. Ewell's opinion, contains checked boxes indicating that Ms. Norris was "moderately limited" in eight different areas, (Tr. 439-40). However, the relevant portion of a physician's opinion is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations. *See, e.g., Andrews v. Astrue*, Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so."). Moreover, the ALJ adequately addressed the limitations found in Dr. Ewell's Section III functional capacity assessment. The ALJ limited Ms. Norris to "simple tasks with simple instructions with a specific vocational profile (SVP) of two (2). She should not be required to

have contact with the general public in her work." (Tr. 18). That assessment is consistent with Dr. Ewell's Section III conclusions that Ms. Norris had adequate memory and understanding, concentration and persistence that is limited by "psych symptoms," and is "isolated and does not like to go out alone," but still "maintains ability to perform tasks." (Tr. 441). Accordingly, I find no error in the consideration of Dr. Ewell's opinion.

Ms. Norris next contends that the ALJ assigned inadequate weight to the opinions of three treating sources: Dr. Janet Jacapraro, a treating primary care physician; Jean Prevas, a certified registered nurse practitioner (CNRP); and Dr. Alan Sofranko, a treating psychiatrist. Pl. Mot. 25-29. Initially, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *1 (S.S.A July 2, 1996) (instructing that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). Also, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Dr. Jacapraro and Ms. Prevas completed a joint opinion form, in which they opined that Ms. Norris would need to lie down 2-3 hours during an 8 hour workday, and would be unable to sit or stand for prolonged periods of time. (Tr. 627-29). The medical evidence of record indicates that Ms. Norris had a normal gait, normal range of motion and strength in her lower extremities, and intact sensation. (Tr. 587, 595). An MRI of the back showed only mild degenerative changes and mild stenosis. (Tr. 630). The ALJ summarized those records noting

that, "Although there is not much in the record for treatment, and the diagnostic evidence of said condition is minimal, the undersigned gave the claimant the benefit of the doubt and restricted her to a reduced range of light work." (Tr. 20). In further support of the ALJ's conclusion, Ms. Norris's own function report indicated that she can lift 10-15 pounds (Tr. 176). The ALJ relied in part upon the opinions of two non-examining state agency physicians, who reviewed Ms. Norris's physical medical records and determined that her physical condition was non-severe. (Tr. 366, 437-48). The ALJ's final RFC assessment, then, is more restrictive than the opinions of those state agency physicians, evidencing the ALJ's careful consideration of the record and willingness to afford Ms. Norris the benefit of the doubt with respect to her impairments.

A similar analysis applies to the reports from Ms. Norris's psychiatrist, Dr. Sofranko. Dr. Sofranko opined that Ms. Norris had marked restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 623). Dr. Sofranko further opined that Ms. Norris had suffered repeated episodes of decompensation of extended duration. (Tr. 624). As the ALJ noted, however, Ms. Norris's activities of daily living, at best, reflect only mild restriction. (Tr. 16-17). Ms. Norris is able to care for herself and occasionally for her grandson, use public transportation, shop, and attend doctors' appointments. *Id.* She is also able to complete crossword puzzles, pay bills, handle a savings account, and use a checkbook. *Id.* Her mental health treatment records show a conservative course of treatment, relatively moderate GAF scores, and good insight. *See, e.g.,* (Tr. 463-64, 467-68, 471-73, 475-77, 479-81, 484-85, 489-91). She had certain gaps in treatment and periods of non-adherence to medication. (Tr. 545) (Dr. Sofranko noting absence from treatment from November, 2010 through April 1, 2011, and failure to take medications for three days). Upon review of Ms. Norris's mental health records and function reports, a reviewing physician, Dr. Ewell, found her capable of performing work-related tasks. (Tr. 441). Accordingly, while the record contains

some contradictory evidence, the ALJ's conclusion is supported by substantial evidence, and should not be disturbed.

Incidentally, I note that I concur with Ms. Norris's contention that the ALJ used unhelpful boilerplate language in making the repeated assertion, "However, if the claimant was as bad as he opined, then she would be hospitalized or meet the listings. . . If condition [sic] was as bad as testimony and if the physician had believed her, then he should have been [sic] referred her for more intensive treatment or prescription adjustments or even hospitalization, none of which were recommended or suggested in the medical evidence."  (Tr. 21).  It is entirely appropriate for an ALJ to consider a discrepancy between a treating physician's opinion and the provision of conservative treatment to address a condition.  However, not every person with disabling impairments is hospitalized or meets a listing.  More nuanced analysis and less reliance on repeated boilerplate (particularly when the boilerplate is grammatically incorrect) would be more helpful to a reviewing court.  Notwithstanding the inclusion of boilerplate language, however, the ALJ's analysis is sufficient to permit me to review the opinion and draw the conclusion that the opinion is supported by substantial evidence.

Ms. Norris's fourth argument is that the ALJ's physical RFC assessment is inconsistent with SSA's Ruling 83-10, which indicates that light work requires the ability to stand and walk for six of eight hours in a workday. Pl. Mot. 29-30.  In fact, however, while Ms. Norris's sitting and standing capacity, as found by the ALJ, did not match the traditional requirement for light work, her other capabilities suggested that she could perform a reduced range of light work. *See* SSR 83–10, 1983 WL 31251, at *5 ("The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The restriction to between two and six hours of standing or walking rendered Ms. Norris capable not only of sedentary work, but of a reduced range of light work that would permit her to sit for the

majority of the workday. *See, e.g., Hence v. Astrue*, No. 4:12–cv–1, 2012 WL 6691573, at *8 (E.D.Va. Nov. 30, 2012) ("[A]n RFC limiting standing or walking to about two hours does not mandate a finding that Hence could only perform sedentary work."); *see also* 20 C.F.R. § 404.1567(b) (noting that a job can be light work "when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). The ALJ appropriately included a provision in Ms. Norris's RFC assessment that she "must have the option to alternate between sitting and standing." (Tr. 18). As the VE testified, there are light jobs, specifically "bench positions," allowing a worker to sit or stand at will. (Tr. 59). Because Ms. Norris is capable of performing that category of light work positions, the ALJ's finding comports with the provisions of SSR 83-10.

Finally, Ms. Norris argues that the ALJ's hypothetical to the VE did not include all of the necessary physical and mental limitations. Pl. Mot. 30. The ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). Essentially, Ms. Norris posits that the hypothetical, which was premised on the RFC assessment, was deficient because the RFC assessment was deficient. As discussed above, the ALJ provided substantial evidence to support the restrictions included in the RFC assessment. Accordingly, the hypothetical was also sufficient, and I recommend the ALJ's opinion be affirmed.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 21); and

2. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 17), and

    CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

Dated:  June 9, 2014                                                      /s/
                                                                       Stephanie A. Gallagher
                                                                       United States Magistrate Judge